IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

OSTAP KAPELIOUJNYI,

        Plaintiff,

v.                                            CIV 09-0866-LH-GBW

L. VAUGHN, as Warden and in his
individual capacity, B. JUDD, as Assistant
Warden "Acting Chaplain" and in her
individual capacity, CORRECTIONS
CORPORATION OF AMERICA, CCA,

        Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Defendants' *Martinez* Report, (*Doc. 17*),

Plaintiff's Response, (*Doc. 18*), and Defendants' Reply, (*Docs. 19 & 20*).  The Court, having

reviewed the briefs, relevant law, and otherwise being fully advised, recommends that

Defendants' *Martinez* Report be construed as a Motion for Summary Judgment and it be

granted in part and denied in part for the reasons described herein.

## BACKGROUND

Plaintiff is a federal inmate currently incarcerated at Cibola County Correctional

Center ("Cibola") in Milan, New Mexico, which is a private prison operated by Corrections

Corporation of America ("CCA").  *See Doc. 1.*  Plaintiff's Complaint alleges violations of his

1

First and Fourteenth Amendment rights under the United States Constitution, violations of Sections 5, 11, and 18 of the New Mexico Constitution, violations of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc-1, or in the alternative under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb and tort claims based upon negligence under New Mexico state law.  *Id.*

On September 9, 2009, Defendants filed a Notice of Removal pursuant to 28 U.S.C. §§ 1131 and 1441(b).  *Doc. 1.*  Then on September 9, 2009, Defendants filed a Motion to Dismiss for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6).  *Doc. 4.*  The following day, on September 16, 2009, Plaintiff filed a Motion to Remand to State Court. *Doc. 6.*  On January 22, 2010, I filed Proposed Findings recommending that Plaintiff's Motion to Remand be denied, and further recommending that Plaintiff had stated claims for relief under either 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 389 (1971), and further recommending that Plaintiff's RFRA or RLUIPA claims along with his state tort claims not be dismissed at that time.  *Doc. 14.*  The district judge adopted my proposed findings on February 11, 2010.  *Doc. 16.*  On January 22, 2010, I ordered Defendants to submit a *Martinez* Report which they did on April 21, 2010.  *Docs. 15 & 17.*  Plaintiff filed his Response on May 21, 2010, and Defendants filed their Reply on June 7, 2010.  *Docs. 22 & 19.*  The Court considers these pleadings below.

2

## STANDARD OF REVIEW

I.   Consideration of *Martinez* Report

In my Order to File a *Martinez* Report, I informed the parties, pursuant to *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991), that their submissions could be used in deciding whether to grant summary judgment. *Doc. 15* at 2.  Because the Report requires consideration of factual material outside the pleadings, the Court will construe Defendants' *Martinez* Report as a motion for summary judgment.  The Court additionally notes that Plaintiff, who is proceeding *pro se*, was afforded (and took) the opportunity to respond to the *Martinez* Report and to present conflicting evidence to controvert the facts set forth therein.

II.   Summary Judgment

Summary judgment is proper if the movant demonstrates that there is "no genuine issue as to any material fact" and that he is "entitled to judgment as a matter of law." FED.R.CIV.P. 56(c).  Only disputes over facts that might affect the outcome of the suit under the applicable law will preclude summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  Nonetheless, the non-moving party must "identify specific facts that show the existence of a genuine issue of material fact," *Munoz v. St. Mary-Corwin Hospital*, 221

F.3d 1160,1164 (10th Cir. 2000), and conclusory allegations are insufficient to establish an issue of fact that would defeat the motion, *Hall,* 935 F.2d at 1110. Additionally, in a summary judgment posture, the verified Complaint and the *Martinez* Report may be treated as affidavits. *Hall,* 935 F.2d at 1111.

Although all facts are construed in favor of the nonmoving party, it is still Plaintiff's responsibility to "'go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to [his] case' in order to survive summary judgment." *Johnson*, 422 F.3d at 1187 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## ANALYSIS

I.   Federal Constitutional Claims:

**Section 1983 Claims**

Plaintiff requests this Court to evaluate his First Amendment claims under 42 U.S.C. § 1983 rather than *Bivens*. *Doc. 18* at 13-17. In order to state a claim under § 1983, a claimant must show (1) deprivation of a right secured by the federal constitution or federal laws; and, (2) that the deprivation was caused by a person acting under color of *state* law. 42 U.S.C. § 1983; *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

In my last Report and Recommendations, I deferred the question of whether Defendants were acting under color of state or federal law as it was not readily ascertainable at that time. *Doc. 14* at 7-8. Since then, the record has been supplemented

with portions of the contract between Defendants and the Federal Bureau of Prisons ("BOP"). *Doc. 17*, Ex. 1.

Defendants argue that they are "federal actors." *Doc. 17* at 6. Their position is supported by the following facts: (1) Defendants are employees of Cibola, which is owned and operated by CCA, a private corporation that contracts with the BOP to house federal inmates; (2) There is no indication in the record that CCA has any relationship with the state, but rather they contract with BOP which is a federal entity; (3) BOP maintains oversight over CCA's performance which includes inspecting the kosher area of the kitchen and the preparation of kosher meals; (4) The contract between BOP and CCA requires that CCA "comply with the Religious Freedom Restoration Act of 1993, 42 USC 2000bb, et. seq., and ensure the religious services programs are consistent with this Act;" *Id.*, Ex. 2 at 37; (5) Plaintiff was placed at Cibola directly by BOP and his status as a federal inmate means that he was convicted of federal crimes in federal court. *See Doc. 17* at 6 & Ex. 2.

Plaintiff disputes this contention. He points out that the individual Defendants are not federal officials or federal employees. *Doc. 18* at 13. Instead, they are employees of a private corporation. Moreover, he notes that CCA is not bound by and does not follow the BOP guidelines for religious diet programs. *Id.* at 14. Relatedly, he claims that BOP leaves the day-to-day prison operations, such as food service, to CCA. He argues that "there is no suggestion that federal policy played a part in Defendant's failure to provide Plaintiff with an adequate kosher diet . . . ." *Id.* at 15. Therefore, he concludes that CCA's actions

5

were not fairly attributable to the federal government.  *Id.*

The primary flaw of these arguments by Plaintiff is that while they may support a finding that the Defendants were not federal actors, they do nothing to support the argument that Defendants were state actors.  In fact, some courts have found private prison corporations to be neither federal nor state actors.  *See Holly v. Scott*, 434 F. 3d 287, 291-94 (4th Cir. 2006).  However, because Defendants have conceded that they are federal actors, that issue is not before the Court.  Plaintiff presents only two arguments which arguably support a finding that CCA is a state actor.  First, Plaintiff claims that CCA is a "state-established prison authority that allows Defendants to hold Plaintiff under 'lock and key.'" *Doc. 18* at 15.  Second, Plaintiff contends that "before signing contract with federal government, Cibola facility housed county/state sentenced prisoners." *Id.* at 16.  Even assuming these facts to be true despite the lack of evidentiary support in the record, the facts about the establishment of CCA in the past and the prisoners it formerly housed is not particularly relevant to the question of whether CCA is currently a federal or state actor. These facts certainly do not override the significant facts listed above which support a finding that Defendants are federal actors when it comes to Plaintiff.

On similar facts, the district judge in *Sarro v. Cornell Corrections, Inc.* 248 F. Supp. 2d 52, 61 (D.R.I. 2003) held that the private prison guards were federal actors reasoning that:

> Here [the plaintiffs] incarcerated at [the private prison] had been arrested by federal law enforcement agents and charged with federal crimes.  They were being detained under authority of the United States government pending

> disposition of the charges against them. By law, they were in the custody of the United States Marshal who exercised ultimate authority over them. The power to detain them was derived solely and exclusively from federal authority and the defendants, in effect, acted as the Marshal's alter ego. The fact that the Marshal temporarily delegated the task of detaining those prisoners to the defendants did not convert that detention into anything other than an exclusively governmental function.

Given the significant facts demonstrating federal action, the reasoning of *Sarro*[1] and the lack of evidence of state action, I conclude that Defendants were acting under color of federal law, not state law. Therefore, I recommend his 1983 claims be dismissed.

### *Bivens* Claims

Next, the Court must determine whether Plaintiff can assert his federal constitutional claims in a *Bivens* cause of action. In *Bivens*, the Supreme Court recognized an implied cause of action for damages against federal officers acting under color of their authority alleged to have violated a citizen's rights under the Fourth Amendment. 403 U.S. at 392. For many years, lower courts assumed that individuals could bring *Bivens* claims

---

[1] The Court recognizes the case cited by Plaintiff reaches a different result. *See Lacedra v. Donald W. Wyatt Detention Facility*, 334 F. Supp. 114, 140 (D.R.I. 2004). However, in *Lacedra*, there was significant evidence in the record that led the court to conclude that the private prison in that case "trace[d its] traditional public function of prison operations to CFDFC, the City of Central Falls, and finally, to the State of Rhode Island." *Id.* To the extent that it stands for the proposition that all prisons, regardless of the type of inmate housed therein, act under color of state, as opposed to federal, law, the case is against the weight of authority. *See e.g. Pollard v, Geo Group, Inc.*, 607 F.3d 583, 588-93 (9th Cir. 2010); *Purkey v. CCA Detention Center*, 339 F. Supp.2d 1145, 1150 n.1 (D. Kan 2004); *Pryce v. Cooper, et al*, CIV 06-0018 JH/LFG, (D.N.M. Oct. 11, 2006), *Doc. 19* at 8 ("employees at a private company under contract to house federal pretrial detainees are federal rather than state actors").

for virtually most constitutional violations committed by a federal agent.  A close review of Supreme Court precedent, especially since 2001, casts significant doubt on that proposition.

Since 1971, the Supreme Court has extended *Bivens* only twice.  The first time was in *Davis v. Passman*, 442 U.S. 228 (1979), where the Court recognized that a female deputy administrative assistant could claim damages under the Fifth Amendment's Due Process Clause against a Congressman who had fired her on the basis of her gender.  Then in *Carlson v. Green*, 446 U.S. 14 (1980), the Court extended *Bivens* to recognize an implied damages action against federal prison officials for a violation of the Eighth Amendment. "Since *Carlson*, [the Supreme Court] ha[s] consistently refused to extend *Bivens* liability to any new context or new category of defendants."  *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001); *see e.g. Chappell v. Wallace*, 462 U.S. 296 (1983) (no *Bivens* remedy for enlisted military personnel against superior officers); *Bush v. Lucas*, 462 U.S. 367 (1983) (no *Bivens* remedy for First Amendment violations by federal employers); *United States v. Stanley*, 483 U.S. 669 (1987) (no *Bivens* remedy for harm to military personnel through activity incident to service); *Schweiker v. Chilicky*, 487 U.S. 412 (1988) (no *Bivens* remedy for wrongful denials of Social Security disability benefits); *FDIC v. Meyer*, 510 U.S. 471 (1994) (no *Bivens* claims against federal agencies); *Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001) (no *Bivens* claims against corporations running private prisons); *Wilkie v. Robbins*, 551 U.S. 537 (2007) (no *Bivens* remedy on theory of retaliation for exercising property

rights).

The Court has explained that recognizing "any freestanding damages remedy for a claimed constitutional violation has to represent a judgment about the best way to implement a constitutional guarantee; it is not an automatic entitlement no matter what other means there may be to vindicate a protected interest . . . ." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). In fact, the Court has made clear that "implied causes of action [like *Bivens*] are disfavored . . . ." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1947-48 (2009) (*quoting Malesko*, 534 U.S. at 68). Consequently, "in most instances [the Court has] found a *Bivens* remedy unjustified." *Wilkie*, 551 U.S. at 550. Most relevant to the instant case, the Court has "not found an implied damages remedy under the Free Exercise Clause." *Iqbal*, 129 S. Ct. at 1948.

The Tenth Circuit has observed this reluctance to expand *Bivens* liability. *See Beattie v. Boeing Co.*, 43 F.3d 559, 564 (10th Cir. 1994). In the First Amendment arena, the Tenth Circuit has recognized *Bivens* liability for some First Amendment claims and rejected it in others. *See Nat'l Commodity and Barter Ass'n v. Archer*, 31 F.3d 1521, 1527 (10th Cir. 1994) (recognizing *Bivens* liability for alleged interference with freedom of association under First Amendment); *but see Beattie*, 43 F.3d at 564-66 (refusing to recognize *Bivens* liability for alleged interference with free speech under First Amendment arising out of security clearance denial). The Tenth Circuit, however, has not directly ruled on the viability of *Bivens* claims premised on the Free Exercise Clause of the First Amendment. For its part,

9

the Supreme Court has expressed deep skepticism of such a claim.  *Iqbal*, 129 S.Ct. at 1948

(The Court's "reluctance [to extend *Bivens* liability] might well have disposed of

respondent's First Amendment claim of religious discrimination[, but] Petitioners do not

press this argument . . .."); *see also Patel v. Bureau of Prisons*, 515 F.3d 807, 813 n.6 (8th Cir.

2008) ("We have never found a *Bivens* action to extend to a Free Exercise claim, and it is

doubtful that we would do so.").

In lieu of controlling precedent on the issue, this Court must conduct the analysis

laid out in *Wilkie*: "In the first place, there is the question whether any alternative, existing

process for protecting the interest amounts to a convincing reason for the Judicial Branch

to refrain from providing a new and freestanding remedy in damages.  But **even in the**

**absence of an alternative**, a *Bivens* remedy is a subject of judgment: 'the federal courts

must make the kind of remedial determination that is appropriate for a common-law

tribunal, paying particular heed, however, to any special factors counselling hesitation

before authorizing a new kind of federal litigation.'"  551 U.S. at 550 (*quoting Bush v. Lucas*,

462 U.S. 367, 378 (1983)) (emphasis added).  Under this test, a *Bivens* remedy must be

rejected if either: (1) a sufficient alternative exists or (2) special factors counsel against

recognizing such a remedy.

### Sufficient Alternative Exists

A prisoner who alleges interference with his Free Exercise rights under the First

Amendment has the alternative of suing under the Religious Freedom Restoration Act

(RFRA).  *See* 42 U.S.C. § 2000bb.  In fact, Plaintiff has made a claim under that statute in addition to his *Bivens* claim.  RFRA mandates that the government "may substantially burden a person's exercise of religion only if it demonstrates that the application of the burden to the person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000bb-1(b).  To establish a prima facie RFRA claim, a prisoner must show that the federal government substantially burdened the prisoner's sincere exercise of religion. *Kikumura v. Hurley*, 242 F.3d 950, 960 (10th Cir. 2001).  The burden then shifts to defendants to show that application of the regulation (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that interest.  *Id.* at 961-62.

Under the First Amendment, the test is very different.  Prisoner's free exercise claims are analyzed on a rational basis standard, so the prison need only show that the regulation has a "logical connection to legitimate interests invoked to justify it."  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987); *see also Boles v. Neet*, 486 F.3d 1177, 1181 (10th Cir. 2007).  This rational basis test is far more deferential to prison officials than the test established by RFRA.  *See Kikimura*, 242 F.3d at 959 ("RFRA standard for suits against the federal government is more protective than what the Constitution requires . . . .").  Consequently, a prisoner who has a colorable Free Exercise claim will always have the alternative of suing under RFRA.

1.      *Who Can Be Sued Under RFRA?*

Nonetheless, to fully determine if RFRA is a sufficient alternative to a First Amendment *Bivens* claim, one must review the law under RFRA regarding who can be sued and what are the available remedies.  *See Holly*, 434 F.3d at 296 (reasoning that Supreme Court recognized *Bivens* liability in *Carlson* because "the *Carlson* plaintiff's 'only alternative' to a *Bivens* claim [against the individual officers] was a Federal Tort Claims Act claims against the United States).  Regarding the proper defendants under RFRA, the statute initially declares that a "person whose religious exercise has been burdened . . . [may] obtain appropriate relief against a government."  42 U.S.C. § 2000bb-1(b).  However, the statute defines the term government as including an "official (or other person acting under color of law) of the United States."  42 U.S.C. § 2000bb-2(1).  Therefore, in addition to claims against the federal government, the plain text permits claims against individuals acting under color of federal law in their individual capacity.  Courts who have analyzed this issue have concluded that RFRA permits such claims.[2]  *See Mack v. Leary*, 80 F.3d 1175,

---

[2]  Significant confusion has arisen around RFRA because of its tumultuous past. When RFRA was first passed it applied to the states as well as the federal government. *See* 42 U.S.C. § 2000bb-2.  In 1997, however, the Supreme Court declared it unconstitutional as applied to the states because it exceeded Congress' authority under the Fourteenth Amendment.  *See City of Boerne v. Flores*, 521 U.S. 507 (1997).  Congress subsequently passed the Religious Land Use and Institutionalized Persons Act (RLUIPA), which is a statute very similar to RFRA but directed only at states and designed to avoid the *Flores* holding.  42 U.S.C. § 2000cc.  Through RLUIPA, Congress conditioned the state's acceptance of federal funds, in part, on its consent to suit for appropriate relief under RLUIPA.  RLUIPA, therefore, is an exercise of Congress'

(continued...)

1177 (7th Cir. 1996), vacated on other grounds sub nom. *O'Leary v. Mack*, 522 U.S. 801

(1997); *Padilla v. Yoo*, 633 F. Supp.2d 1005, 1039 (N.D. Cal. 2009); *Agrawal v. Briley*, 2006 WL

3523750 (N.D. Ill. Dec. 6, 2006); *Jama v. U.S.I.N.S.*, 343 F. Supp.2d 338 (D.N.J. 2004); *Commack*

*Self-Service Kosher Meats Inc. v. State of New York*, 954 F. Supp. 65, 69 (E.D.N.Y. 1997).

2.      *Available Remedies Under RFRA*

Turning now to the available remedies under RFRA, the statute provides for

"appropriate relief."   42 U.S.C. § 2000bb-1(b).   It is undisputed that RFRA permits

injunctive relief against proper defendants which, as discussed above, includes both

governmental and individual defendants. *See Kikumura v. Hurley*, 242 F.3d 950, 958-63 (10th

Cir. 2001); *Jama*, 343 F. Supp.2d at 372-76; *Webman v. Federal Bureau of Prisons*, 441 F.3d 1022,

1026 (D.C. Cir. 2006) ; *Tinsley v. Pittari*, 952 F.Supp. 384, 393 (N.D. Tex. 1996).   However, the

availability of monetary damages is not clear.

It is well-settled that the federal government is immune from suits unless it has

---

[2](...continued)
Spending Clause power.  *See Van Wyhe v. Reisch*, 581 F.3d 639, 649-652 (8th Cir. 2009).
Because RLUIPA is premised upon Spending Clause power, individuals acting under
color of state law cannot be sued under RLUIPA in their individual capacities.  *Smith v.
Allen*, 502 F.3d 1255, 1274 (11th Cir. 2007) ("the Spending Power cannot be used to
subject individual defendants . . . to individual liability in a private cause of action"); *see
also Jotunbane v. Sedillo*, 2010 WL 1781922, *4 (D.N.M. Apr. 20, 2010).  Because of the
similar language of RFRA and RLUIPA and their interwined histories, some courts try
to conflate the two regarding the ability to sue officials in their individual capacity.  *See
e.g. Jean-Pierre v. Bureau of Prisons*, 2010 WL 3852338, *6 n.4 (W.D. Pa. July 30, 2010).
Nonetheless, because RFRA is not circumscribed by the limitations of the Spending
Clause power, the plain text, which permits claims against individuals, controls.

waived immunity.  *See Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999).  The Supreme Court requires that waivers of sovereign immunity be "unequivocally expressed in statutory text and . . . [t]o sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims."  *Lane v. Pena*, 518 U.S. 187, 192 (1996).  Every court which has considered this issue has determined that the RFRA's reference to "'appropriate relief' is not the kind of unambiguous waiver necessary to subject the United States to liability for damages." *Jama*, 343 F.Supp.2d at 373 (quoting *Tinsley*, 952 F.Supp. at 389); *see also Meyer v. Federal Bureau of Prisons*, 929 F.Supp. 10, 13-14 (D.D.C. 1996); *Lepp v. Gonzales*, 2005 WL 1867723, *8 (N.D. Cal. Aug. 2, 2005).  This Court agrees with their reasoning and also would hold that RFRA does not permit monetary damages against the United States.

"That Congress did not waive sovereign immunity for [RFRA] damages suits does not necessarily mean that [a plaintiff] may not collect damages from [non-governmental] defendants, however."  *Jama*, 343 F.Supp. at 373.  Federal officials sued in their individual capacities are not immune from suit.  *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 686-90 (1949).  RFRA allows for "appropriate relief" from an "official (or other person acting under color of law) of the United States."  42 U.S.C. § 2000bb.  Because individuals are not cloaked in sovereign immunity, there is no requirement of an "unambiguous waiver" of immunity when they are defendants.  Therefore, when it comes to non-governmental defendants, the RFRA authorization of "appropriate relief" permits

monetary damages.  *See Jama*, 343 F.Supp.2d at 373-76; *see also Padilla*, 633 F.Supp.2d at 1039; *Lepp*, 2005 WL 1867723 *8.  Thus, the remaining question is whether RFRA permits monetary damages against the types of defendants in the instant case – (1) a private corporation running a prison for federal inmates; and (2) individual employees of such a corporation.  In other words, are the corporation and/or the individual employees "other person[s] acting under color of law"?  42 U.S.C. § 2000bb-2(1).

While there is no controlling precedent on this issue in the context of RFRA, courts in this district have addressed a similar issue in the context of § 1983 claims.  Title 42 U.S.C. § 1983 creates liability against a "person" who, "under color of state law," violates another's constitutional rights.  It is settled in this district that a private corporation that operates a prison pursuant to a contract with the state would be considered to be acting under color of state law and would therefore be amenable to suit under § 1983.  *See Herrera v. County of Santa Fe*, 213 F.Supp.2d 1288, 1290 (D.N.M. 2002).  Similarly, an individual employee of such a corporation is also considered to be acting under color of state law and amenable to suit under § 1983.  *See Giron v. Corrections Corp. of America*, 14 F.Supp.2d 1245, 1246 (D.N.M. 1998).  Given the identical language of § 1983 and RFRA in similar legal contexts, it follows that (1) a private corporation running a prison for federal inmates; and (2) individual employees of such a corporation are "person[s] acting under color of law" under RFRA.  Consequently, both the corporation and the individual employees can be

subject to monetary damages under RFRA.[3]

### 3.    RFRA Is Alternative Remedy

In summary, under RFRA, a plaintiff may sue a federal government agency and its agents, a private corporation running a prison for federal inmates, and individual employees of a private corporation running a prison for federal inmates.  Injunctive relief is available for each of these categories of defendants.  Monetary damages are recoverable against each of these categories of defendants except the federal government and its agencies.  Consequently, not only would a prisoner who has a colorable Free Exercise claim always have the alternative of suing under RFRA, but he would also have a broader range of remedies available under RFRA than under *Bivens*.  Therefore, a suit under RFRA is a sufficient alternative to a putative Free Exercise claim under *Bivens*.  Given the existence of the alternative of suing under RFRA, the *Wilkie* test dictates that *Bivens* liability should not be extended to Free Exercise claims.[4]  *See Wilkie*, 551 U.S. at 550.  Thus, there is no need

---

[3]  However, compensatory monetary damages may be barred by the operation of another statute.  The Prison Litigation Reform Act (PLRA) states, in part, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  This potential restriction from the PLRA, however, does not lessen a RFRA action as an alternative to a *Bivens* action because the PLRA restriction would apply to both types of claims.  *See Searles v. Van Bebber*, 251 F.3d 869, 874-77 (10th Cir. 2001) (PLRA restriction applies to all prisoner lawsuits even if premised upon constitutional violation).

[4]  Courts are split on whether alternative remedies under state law are sufficient to foreclose *Bivens* liability in an area.  *See Holly*, 434 F.3d at 295-96; *but cf. Pollard*, 607

(continued...)

to look for "special factors counselling hesitation" before concluding that Plaintiff cannot bring a *Bivens* action to enforce his right to practice his religion.  *Id.*  Therefore, I recommend his *Bivens* claims be dismissed.

II.    RFRA Claims:

As described above, RFRA mandates that the government "may substantially burden a person's exercise of religion only if it demonstrates that the application of the burden to the person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. § 2000bb-1(b).  To establish a prima facie RFRA claim, a prisoner must show that the federal government substantially burdened the prisoner's sincere exercise of religion. *Kikumura*, 242 F.3d at 960.  The burden then shifts to defendants to show that application of the regulation (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that interest.  *Id.* at 961-62.

**Plaintiff's Complaints**

It is undisputed that Cibola offers a kosher diet plan and that Plaintiff subscribes to it.  Defendants have submitted the "kosher food diet" policy[5] under which this food is

_____

[4](...continued)
F.3d at 595.  Because RFRA is a Congressional act, even those courts would appear to agree that its existence as an alternative would preclude *Bivens* liability.

[5]  To be precise, the only "policy" submitted by Defendants is portions of the "Associate and Inmate Training 2008" manual regarding the "Proper Preparation of Hot
(continued...)

prepared.  Plaintiff's complaints can be divided into two categories : (1) claims that Cibola

does not comply with it's own policy and therefore serves non-kosher food; and (2) claims

that, even if followed, the Cibola policy would not comply with the Jewish laws governing

kosher food.

First,[6] Plaintiff claims that the room designated for kosher food preparation is not

secluded and is used in such a way that the kosher food becomes contaminated in violation

of Jewish law.  *Doc. 18* at 3.  The policy as written does not explicitly include a requirement

of a secluded room for kosher food preparation.  *See Doc. 17*, Ex. A.  However, a number

of policy requirements imply the existence of such an area.  For instance, the policy speaks

of "the kosher preparation area."  *Id.*  The policy also repeatedly refers to kosher cookware

being "washed and stored separately from all other cookware."  *Id.*  Moreover, the affidavit

of the assistant warden states that there "is an area within the food services department

designated specifically for the preparation of Kosher meals.  It is an enclosed room toward

the back of the food services area."  *Id.* at 3-5, Ex. A.  The affidavit explains that access to

the room is very limited.  *Id.*  Plaintiff replies that, in practice, access to the room is not

really very limited leading to contamination of kosher food and utensils.  *Doc. 18* at 3-4.

---

[5](...continued)
Meals for Kosher Menu Plan" and "Proper Preparation of Kosher 'Brown Bag' Meals."
*Doc. 17*, Ex. A.  Defendants have also submitted an affidavit from the Assistant Warden
which describes the implementation of the kosher meal plan.  *Id.*

[6] The Court has combined related complaints for the sake of organization and
clarity.

Plaintiff further complains that hot food is not served at a minimum of 140 degrees. *Doc. 18* at 5-6.  The Cibola policy explicitly requires that all "hot entrees must be heated to the proper temperature and held at a minimum 140 degrees until served."  *Doc. 17*, Ex. A. Plaintiff also complains that "cooked" food is inadequately sealed before serving causing the "fumes and odors from non-kosher foods [to] penetrate and contaminate them."  *Doc. 18* at 4.  The Cibola "Hot Meals" policy indicates that "special cooking instructions must be followed [including that all] items are double wrapped in plastic wrap, as appropriate, and may be placed on a usable tray."  *Doc. 17*, Ex. A.  Moreover, the affidavit of the assistant warden states that "[o]nce Kosher menu items are prepared, they are placed on Styrofoam trays that are wrapped with plastic wrap."  *Id.*, Ex. 1.  Plaintiff replies that, in practice, this procedure is not followed in a large number of circumstances.  *Doc. 18* at 5-6.

Plaintiff complains that Kosher-certified cold food, such as tuna, is not being placed in disposable cups and sealed.  *Id.* at 5.  The Cibola "Hot Meals" policy indicates that some "kosher food items come in bulk packs and must be proportioned for individual meals (i.e. tuna, peanut butter, jelly, cold cereal, salad dressings, etc.)  For meal service, a freshly opened bulk pack of kosher food is measured with a clean, disposable utensil/cup and placed in disposable cups, sealed and double wrapped."  *Doc. 17*, Ex. A.

Plaintiff next complains that the food for the kosher food plan is not prepared at the

prison under the supervision of a mashgiach.[7]  *Doc. 18* at 7.  The Cibola policies do not require such supervision.  *See Doc. 17*, Ex. A.  In fact, Defendants contend that such supervision is not required when the ingredients are all Kosher.  *Doc. 19* at 11.

Finally, Plaintiff contends that "Kosher" food is being prepared on Saturday.  *Doc. 18* at 4.  The Cibola policy recognizes that such preparation would be impermissible under Jewish law.  *Doc. 17*, Ex. A.  Therefore, the policy requires that "Kosher 'Brown Bag' meals must be prepared and delivered to the serving area before sun down each Friday.  The meals are distributed on the Jewish Sabbath, Saturday."  *Id*.  Plaintiff however contends that "all [kosher] meals that are served on Saturdays are prepared on the same day, two-three hours before the service."  *Doc. 18* at 4.

**Substantial Burden**

First the Court must consider whether Plaintiff has presented a genuine issue of material fact as to whether (1) the alleged conduct has occurred and (2) if such conduct imposes a substantial burden on the Plaintiff's exercise of his faith.  On the first question, though the Defendants dispute Plaintiff's version of facts, Plaintiff has presented sufficient factual support to demonstrate a genuine issue of fact regarding whether this conduct is

---

[7] In Judaism, a mashgiach is defined as "an inspector appointed by a board of Orthodox rabbis to guard against any violation of the Jewish dietary laws in food processing plants, meat markets, etc., where food presumed to be kosher is prepared or served for public consumption." http://dictionary.reference.com/browse/mashgiach (website last visited on 11/18/2010) (Attachment 1).

occurring.  For each of his allegations, Plaintiff has "'designate[d] specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to [his] case' in order to survive summary judgment."  *Johnson*, 422 F.3d at 1187 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[8]  The second question, however, is more complicated.

Plaintiff alleges that he practices the Jewish religion and considers himself bound by the laws of kashruth.[9]  *Doc. 1* at 3.  Plaintiff has requested a kosher food plan.  Plaintiff alleges that each of the deficiencies listed above create a circumstance where the "kosher food plan" served at Cibola is not kosher under the laws of kashruth.  *Doc. 18* at 6-11. Defendants contend that Plaintiff has not explained how these alleged deviations substantially burden his religious beliefs.  *Doc. 19* at 9-10.

The Tenth Circuit has held that a religious exercise is substantially burdened under RFRA when the government: (1) "significantly inhibit[s] or constrain[s] conduct or expression that manifests some central tenet of a prisoner's individual beliefs"; (2) "meaningfully curtail[s] a prisoner's ability to express adherence to his or her faith"; or (3) "den[ies] a prisoner reasonable opportunities to engage in those activities that are

---

[8]  Defendants point to Cibola's kosher policy to demonstrate the lack of genuine issues of fact.  *Doc. 17* at 3.  However, most of Plaintiff's complaints are not with the policy as written but as executed.  On these issues, Plaintiff has presented sufficient evidence of deviations between theory and practice to prevent summary judgment.

[9] Kashruth is the Hebrew word for kosher and mean fit or proper as it relates to dietary laws.  *See* http://kehillah-vnei-yishrael-ahavath-shalom-rav.7p.com/kashruth.html (website last visited on 8/30/2010) (Attachment 2).

fundamental to a prisoner's religion." *Werner v. McCotter*, 49 F.3d 1476, 1480 (10th Cir. 1995) (citations omitted); *see also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1315 (10th Cir. 2010) (defining "substantial burden" under RLUIPA in substantially the same way).

With respect to Plaintiff's complaints about the temperature at which the hot kosher food is served, Plaintiff has made no assertion that eating such food would violate his understanding of Jewish law.  However, with the respect to the remaining complaints, Plaintiff has sufficiently contended that, if true, the food so prepared would violate his understanding of Jewish law.  *See Searles v. Dechant*, 393 F.3d 1126, 1131 n.6 (10th Cir. 2004) (recognizing that "'kosher' covers a broad spectrum of interpretation").  Therefore, accepting Plaintiff's complaints and religious assertions as true, the method by which the Cibola kosher food plan is administered puts Plaintiff in the position of eating food which does not conform to his religious beliefs or not eating at all.  Thus, the record on summary judgment presents genuine issues of material fact about whether Cibola's administration of the kosher food plan substantially burdens Plaintiff's religious exercise.  *See Nelson v. Miller*, 570 F.3d 868, 879 (7th Cir. 2009) ("We have held that a prisoner's religious dietary practice is substantially burdened when the prison forces him to choose between his religious practice and adequate nutrition"); *see also Baranowski v. Hart*, 486 F.3d 112, 125 (5th Cir. 2007) (holding that prison's "policy of not providing kosher food may be deemed to work a substantial burden upon [Plaintiff]'s practice of his faith"); *Hudson v. Dennehy*, 538 F.Supp.2d 400, 411 (D.Mass. 2008) (finding, after bench trial, that refusal of halal menu

consistent with their beliefs "substantially burdened plaintiffs' exercise of their religious beliefs by creating pressure on plaintiffs to consume meals that do not conform with their understanding of the requirements of Islamic law").

### Compelling Interest

Under RFRA, once a defendant satisfies the substantial burden test, "the government must justify the burden by establishing a sufficiently compelling interest and showing that it could not accommodate religion more without serving that interest less." *U.S. v. Friday*, 525 F.3d 938, 946 (10th Cir. 2008). Here, Defendants argue that "the prison has a compelling interest in a simplified religious diet program that satisfies the needs of all inmates on the religious diet program." *Doc. 19* at 12. This argument does not address whatsoever Plaintiff's complaints which are based upon deviations from the Cibola kosher food plan policy. Commonsense would dictate that Cibola would have written its policy in a manner which was sufficiently "simplified" to enable it to accommodate the needs of all inmates in the program. Therefore, to the extent that Plaintiff is requesting that Defendants be made to comply with their own policy, the asserted compelling interest in a "simplified religious diet program" does not appear to be sufficient to defeat Plaintiff's RFRA claim. Of course, Plaintiff has complained about food preparation which would not otherwise violate the Cibola policy. Nonetheless, Defendants' cursory presentation on the issue of "compelling interest" is not sufficient to establish that there is no genuine issue of material fact on this point.

23

Because there exist genuine issues of material fact with respect to Plaintiff's RFRA claim, I recommend that claim should survive Defendants' Motion for Summary Judgment. However, not all the remedies Plaintiff seeks are available.  Plaintiff requests nominal, compensatory, consequential and punitive damages as well as injunctive relief. Unfortunately for Plaintiff, his claim is subject to the Prison Litigation Reform Act (PLRA) which states, in part, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  Plaintiff has not alleged any physical injury as a result of Defendants' conduct.  Therefore, the PLRA bars any recovery for compensatory or "consequential" damages.  *See Mitchell v. Horn*, 318 F.3d 523, 533-34 (10th Cir. 2003).  Based on the foregoing, I recommend granting Defendant's Motion for Summary Judgment with respect to the claim for compensatory and consequential damages under RFRA, but denying the Motion with respect to Plaintiff's RFRA claim for nominal and punitive damages, and injunctive relief.

III.    RLUIPA Claims:

Plaintiff has also asserted claims under RLUIPA.  A cause of action under RLUIPA is limited to actions of a "government," defined as "(I) a State, county municipality, or other governmental entity created under the authority of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (I); and, (iii) any other person acting under color of State law."  *See* 42 U.S.C. § 2000cc-5(4)(A).  As described

above, Defendants were not acting under color of *state* law with respect to Plaintiff.  *See*

*supra* pp. 4-7.  Accordingly, Plaintiff cannot bring a claim under RLUIPA because RLUIPA

does not apply to federal prison inmates or federal government action.  *Navajo Nation v.*

*U.S. Forest Service*, 535 F.3d 1058, 1077 (9th Cir. 2008) ("RLUIPA does not apply to a federal

government action"); *see also Benson v. Corrections Corp. of America,* 2009 WL 2461016 *2

(*N.D. Ohio 2009*); *Moore v. Cross*, 2007 WL 835417 at *11 (D. Minn. 2007); *Pineda-Morales v.*

*DeRosa*, 2005 WL 1607276, at *4 (E.D. N.J. 2005) (RLUIPA "only applies to state and local

governments, not a federal prison").  Accordingly, Plaintiff's RLUIPA claims should be

dismissed.

IV.   <u>State Negligence Claims</u>:

Plaintiff asserts state tort claims of negligence and negligent supervision and

respondeat superior.  *Doc. 1* at 11.  A negligence claim under New Mexico law "requires

the existence of a duty from a defendant to a plaintiff, breach of that duty, which is

typically based upon a standard of reasonable care, and the breach being a proximate cause

and cause in fact of the plaintiff's damages."  *Herrera v. Quality Pontiac*, 73 P.3d 181, 187

(N.M. 2003).  Therefore, a "finding of negligence . . . is dependent upon the existence of a

duty on the part of the defendant."  *Id.*  Plaintiff has not asserted what duty he contends

Defendants have regarding provision of a religious diet to him as an inmate.  Because

Plaintiff is proceeding *pro se*, the Court will *sua sponte* consider if such a duty exists.  Under

New Mexico law, the "existence of a tort duty is a policy question that is answered by

reference to legal precedent, statutes, and other principles of law." *Ruiz v. Garcia*, 850 P.2d 972, 975 (N.M. 1993). Essentially, courts look to find a duty created by statute or a duty created by common law. *See Herrera*, 73 P.3d at 187-94. The Court has located no duty under common law to provide an inmate with a religious diet which scrupulously honors his particular religious faith. On the other hand, as discussed above, the RFRA statute may create such a duty in certain circumstances.

Assuming, however, that RFRA would create such a duty and that Plaintiff has sufficiently alleged breaches of that duty, Plaintiff's state negligence claims may still be infirm. Plaintiff has not alleged any facts establishing a separate cause of action based on negligence or negligent supervision. In fact, given that the only possible tort duty apparent to the Court arises from RFRA, Plaintiff must prove a RFRA violation to establish his negligence claim. Under such circumstances, the negligence claims are subsumed into the RFRA claim. *See Abordo v. State of Hawaii*, 902 F. Supp. 1220, 1227 (D. Hawaii 1995) (negligence claims based on prison policy of not permitting long hair for religious reasons subsumed into RFRA claim based on same policy); *see also Bashir v. Rockdale County*, 445 F.3d 1323, 1332 (11th Cir. 2006) (where excessive force claim is predicated solely on allegations the arresting officer lacked power to make arrest, the excessive force claim is entirely derivative of, and is subsumed within, the unlawful arrest claim); *Pyramid Travel, Inc. v. Sri Lankan Travel, Inc.*, 64 Fed. App'x 70, 73 (9th Cir. 2003) (negligent publication claim is "substantively equivalent to a libel claim" and is therefore subsumed by libel

claim); *Northwinds Abatement, Inc. v. Employers Ins. of Wausau*, 258 F.3d 345, 352 (5th Cir. 2001) (negligence cause of action based on handling of insurance claims is subsumed by breach of underlying contract suit).  Permitting the negligence claim to proceed based on the RFRA duty would obviously lead to prison official liability for RFRA violations based on simple negligence.  However, "simple negligence, the 'lowest common denominator of customary tort liability,' does not suffice to meet the fault requirement of" RFRA.  *Lovelace v. Lee*, 472 F.3d 174, 194 (4th Cir. 2006) (interpreting identical RLUIPA language as requiring at least deliberate indifference, if not intentional, conduct for liability).  Given that Plaintiff's negligence claims are premised on RFRA,[10] which requires more than negligence for liability, allowing Plaintiff's independent negligence claims to proceed could lead to an absurd result – no RFRA liability, but liability for negligently not complying with RFRA. Under these circumstances, I recommend finding Plaintiff's claims based on negligence to be subsumed in his RFRA claim and dismissing them as independent causes of action.

---

[10]  The State of New Mexico has passed a statute similar to RFRA - the New Mexico Religious Freedom Restoration Act (NMRFRA).  NMSA 1978 § 28-22-2 et seq. One could argue that the NMRFRA created a statutory duty upon which to base Plaintiff's negligence claims.  However, that logic suffers from the same flaw as premising the negligence claim on RFRA itself.  Under NMRFRA, an official is not liable for simple negligence because the New Mexico Tort Claims Act does not waive immunity to liability for simple negligence.  *See Dickson v. City of Clovis*, ___ P.3d ___, 2010 WL 3169315, *5 (N.M. Ct. App. 2010).  Therefore, it would be incongruous to allow an independent negligence claim premised on a statutory duty created by NMRFRA when immunity would bar such a suit.

V.      <u>State Constitutional Claims</u>:

Plaintiff also alleges violations of the New Mexico Constitution.  As described above, the Defendants are not state actors.  State action is required to assert a violation of the New Mexico Constitution.  *See State v. Johnson*, 779 P.2d 556, 558-59 (N.M. Ct. App. 1989). Accordingly, Plaintiff's state constitutional claims should be dismissed.

<u>**CONCLUSION**</u>

Plaintiff is a federal inmate who asserts claims pursuant to section 1983, *Bivens*, RFRA, RLUIPA, state claims of negligence, and claims under the New Mexico Constitution. Because Defendants are federal actors, I recommend granting summary judgment for Defendant on Plaintiff's section 1983 claims, his RLUIPA claims and state constitutional claims. I recommend granting summary judgment for Defendant on Plaintiff's *Bivens* claim because Plaintiff has an alternative remedy under RFRA.   I recommend dismissing Plaintiff's negligence claims as independent causes of action because they are subsumed in Plaintiff's RFRA claims.  With respect to the RFRA claims, I recommend denying Defendants' motion for summary judgment because there exist material issues of fact regarding that cause of action.  However, because Plaintiff has presented no evidence of, or even alleged, physical injury, I recommend granting summary judgment as to Plaintiff's claims for compensatory and consequential damages under RFRA.   In summary, I recommend granting summary judgment as to all claims except for Plaintiff's RFRA claims seeking nominal and punitive damages and injunctive relief.

Wherefore,

**IT IS HEREBY RECOMMENDED THAT:**

(1)  Defendants *Martinez* Report should be construed as a Motion for Summary

Judgment;

(2)  Summary Judgment should be granted in favor of Defendants for all claims

except for Plaintiff's RFRA claims seeking nominal and punitive damages and

injunctive relief.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____

UNITED STATES MAGISTRATE JUDGE